**IN THE UNITED STATES BANKRUPTCY COURT FOR**
**THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| **IN RE:** | **CASE NO. 11-02466** |
| | **Chapter 11** |
| **DAVID EFRON** | |
| | |
| **Debtor(s)** | **FILED & ENTERED ON 06/28/2013** |

## <u>OPINION AND ORDER</u>

Before this Court is Creditor's Memorandum on Domestic Support Obligation [Dkt. No. 395]; Creditor's Motion for Entry of Order on Nature of Domestic Support Obligation Payments [Dkt. No. 404]; Debtor's Opposition to Creditor's Motion for Entry of Order on Nature of Domestic Support Obligation Payments [Dkt. No. 440]; Creditor's Reply to Debtor's Opposition to Creditor's Motion for Entry of Order on Nature of Domestic Support Obligation Payments [Dkt. No. 505]; Debtor's Sur-Reply to Creditor's Reply Should This Court Grant Leave to Creditor to File a Reply or in the alternative Opposition to Creditor's Leave to Reply and his subsequent filing [Dkt. No. 523], Creditor's Informative Motion Regarding State Court Judgment on Support Payments Due [Dkt. No. 454], Creditor's Motion to Submit Certified Translation of State Court Judgment on Support Payments Due and its accompanying translations [Dkt. No. 456, 478], Debtor's Response to Creditor's Motion Regarding State Court Judgment on Support Payments Due [Dkt. No. 457], Debtor's Informative Motion Regarding State Court Judgment on Divorce Case [Dkt. No. 465], Debtor's Motion to Compel Production of Documents [Dkt. No. 466], Debtor's Response to

1

Creditor's Motion to Submit Certified Translation of Amended Judgment [Dkt. No. 480], Creditor's Motion Requesting Entry of Order as to Domestic Support Obligation Issue [Dkt. No. 496]; and, Debtor's Response to Motion Requesting Entry of Order as to Domestic Support Obligation Issue [Dkt. No. 498]. For the reasons set forth below, this Court determines that the $50,000.00 monthly payment in controversy is a "Domestic Support Obligation" as defined in § 101(14A) of the Bankruptcy Code.

**I. Factual Background**

The procedural history of this case is complex, and this Court acknowledges that facts surrounding domestic relations cases can be distracting in nature because of sensitive facts and contentious nature. Thus, this Court shall only highlight facts that it deems to be relevant to its current determination as to whether the $50,000.00 per month payment constitutes a domestic support obligation within the Bankruptcy Code. Accordingly, this Court shall summarize the significant procedural happenings below.

On May 3, 2001, the Court of First Instance of Puerto Rico ("State Court") issued a divorce judgment in the case of Candelario v. Efron, KDI 1999-1421 (the "Divorce Case"). On the same day, the State Court also issued an order mandating Debtor to pay Madeleine Candelario ("Creditor") $50,000.00 per month for support until all the marital assets were divided (the "Support Payments"). Debtor subsequently did not make such payments to Creditor. On March 4, 2011, the State Court held a hearing to determine the amount Debtor owed to the Creditor in past due Support Payments. At such hearing, the State Court determined that Debtor owed Creditor a minimum of $3,314,936.40

2

plus corresponding interest. Subsequently, on March 25, 2011, Debtor David Efron filed for chapter 11 bankruptcy. In Debtor's Amended Disclosure Statement [Dkt. 129], Debtor specified that the reason for his bankruptcy filing was the Creditor's pursuit to collect on the past-due Support Payments. On January 18, 2012, Creditor filed her amended proof of claim asserting her claim for conjugal property division and domestic support payments. Debtor filed an objection to Creditor's amended claim on February 2, 2012. On March 12, 2012, Creditor moved for relief from the automatic stay to continue the State Court proceedings in the Divorce Case. On April 9, 2012, Creditor filed a motion for payment of post-petition Support Payments due. Debtor opposed such motion on April 10, 2012. This Court held a hearing on this issue on April 24, 2012. At the hearing, this Court lifted the stay on both the Divorce Case and the division of conjugal property case, Efron v. Candelario, KAC 2001-4173 (the "Division Case"). On June 8, 2012, Debtor filed a motion requesting clarification of the order lifting the stay in the Divorce Case and a determination that the payments ordered by the Divorce Decision are not support payments. This Court issued such clarifications on the same day clarifying that the stay was modified for both state court cases to allow litigation, including any legal procedural matter necessary in order to obtain a final unappealable judgment in favor of one of the parties. On August 20, 2012, Creditor filed her objections to the first amended plan of reorganization ("Objection to Plan"). In such objection, Creditor argues that Debtor's first amended plan of reorganization ("First Amended Plan") could not be confirmed because Debtor was not current on his Support Payment and his plan did not provide for payment to fulfill the State Court order in the Divorce Case. Debtor filed his corresponding response to the objection on August 28, 2012. This Court held a hearing for the confirmation of the First Amended

3

Plan on August 29, 2012. At the hearing, the parties disagreed on the nature of the payments due to the Creditor and thus this Court ordered the parties to ask the State Court to clarify the nature of such payments. In the event the State Court refused to clarify the issue, the parties were to file legal briefs in this Court. On September 21, 2012, parties informed this Court that the State Court declined to clarify the issue [Dkt. 379, 380].  The parties filed legal briefs addressing the issue in this Court and their accompanying replies followed.

Upon the filing of the various briefs and motions, the following procedural happenings also occurred: On January 8, 2013, Creditor requested this Court for leave to file its reply to Debtor's Opposition to Creditor's Motion for Entry of Order on Nature of Domestic Support Obligation Payments [Dkt. No. 441]; this Court granted such Motion on May 7, 2013. On the same day, this Court also granted Debtor's Request for Leave to File a Sur-Reply to Creditor's Reply Should This Court Grant Leave to Creditor to File a Reply or in the alternative Opposition to Creditor's Leave to Reply filed on January 18, 2013 [Dkt. No. 445]; On February 27, 2013, Debtor filed a motion to compel production of documents; the court denied this request on May 7, 2013, based on the reasoning that Creditor's tax filing obligations were irrelevant to the determination of whether the $50,000.00 monthly payment are a Domestic Support Obligation or an advance of Community Property. On March 26, 2013, Creditor filed a motion for Leave to File Reply to Debtor's Response to Creditor's Motion to Submit Certified Translation of Amended Judgment [Dkt. No. 485]; the court denied the request on May 7, 2013.

In Creditor's initial briefing on the issue, Creditor argues that pursuant to 11 USC § 101 (14A), Domestic Support Obligation is defined as having three elements: debts including its

4

corresponding interest that is (1) owed to a former spouse; (2) in the nature of alimony, maintenance, or support of such former spouse without regard to whether such debt is expressly so designated; (3) established by a reason of a divorce decree. Creditor further points out that pursuant to Article 142 of the Civil Code of Puerto Rico, 31 L.P.R.A. § 561, "support" is defined as "…all that is dispensable for maintenance, housing, clothing, medical attention, according to the social position of the family." Citing Lopez v. Melendez, CC-97-153, 1997 WL 289242 (P.R. May 22, 1997), Creditor argues that in Puerto Rico, absent a pre-nuptial agreement, marriages are to be governed by the conjugal partnership regime. Such conjugal partnership regime, upon divorce, becomes a community property regime. Creditor also points out that per Article 100 of the Puerto Rico Civil Code, 31 L.P.R.A. § 343, a spouse's request for alimony - only while the divorce proceedings are pending - ends when the State Court issues a final divorce decree. After such decree, an ex-spouse may then request alimony post-divorce pursuant to Article 109 of the Puerto Rico Civil Code, 31 L.P.R.A. § 385. Such Article applies if any of the ex-spouses does not have sufficient means for subsistence once the divorce is decreed. However, such Article does not apply when the resulting community property has enough assets and the ex-spouse thus co-owns such assets. However, Creditor points out that when such community property assets are under the exclusive and total control of the ex-husband, Article 1325 of the Puerto Rico Civil Code, 31 L.P.R.A. §3700 applies. Creditor further argues that this is applicable to this instant case because of Debtor's singlehanded control, her lack of income or means of support, and thus the State Court awarded her $50,000.00 per month to be paid under Article 1325 to be charged and later to be reduced from the community estate when such community assets are divided. Relying on Lopez, Creditor argues that this case resembles Lopez in that under Puerto Rico

law, after a divorce, although she does not have a right to alimony post-divorce under Article 109 of the Puerto Rico Civil Code, she does have a right to receive advances from Debtor's community assets in order to self-support. Creditor also points out that Debtor never appealed the Divorce Case per the Puerto Rico Court of Appeals Judgment on April 30, 2010, and its accompanying order for Support Payments of $50,000.00 per month, thus such decision becomes *res judicata* and final. To date, Debtor has refused to make such Support Payments. Creditor also points out that she is 60 years old, and even though she has some legal experience immediately following her graduation from law school more than thirty-five (35) years ago, she is currently a housewife and mother. Creditor also points out that as of today she has no means of support and would need these support assets to pay legal fees and costs associated with her ongoing litigations. Creditor also points out that on the contrary, because the community assets are still in Debtor's control, Debtor is using such assets to support his lavish lifestyle including jet planes, multiple luxury vehicles in Puerto Rico and Florida, as well as multiple homes in Puerto Rico and Florida. Summarily, Creditor requests this Court to hold that the $50,000.00 monthly payments are a Domestic Support Obligation within the meaning of § 101(14A).

In opposition, Debtor argues that Creditor's claims in interest over Debtor's property are all non-marital in nature. Creditor, in essence, is claiming an interest in a series of corporations or entities in which Debtor has an interest by virtue of substantial parental inheritance. Debtor further points out that in the Divorce Case, there are no domestic support obligations pending, but instead, these amounts are for advances to undetermined future conjugal property division. Debtor argues that pursuant to Article 100 of the Puerto Rico Civil Code 31 L.P.R.A. § 343, Creditor's right to

alimony ceases to exist once the divorce is final. Debtor argues that per the State Appellate Court Decision, 2000 DTA 1918, the State Court denied the Creditor her right to permanent alimony after the divorce decree. While the Puerto Rico court denied Creditor's request of alimony, Debtor requested a Florida Court to dismiss its proceeding case and transfer such matters to Puerto Rico. At the Creditor's request, Debtor advanced her $750,000.00 of future property distribution conditioned on that any overpayments would be returned to Debtor if the Puerto Rico state court determines her share of the community assets was lower than such amount. Regardless, subsequently, Creditor asked a Puerto Rico Court in 1999 to award her alimony, to which the Court denied her request in the decision 2003 DTA 1528. Debtor argues that while Creditor has a claim to the enjoyment of community assets, she does not have a legitimate alimony claim. Further, Debtor points out that advances for possible participation on the community assets is not based on need but rather is based on her possible rights as co-owner, thus Creditor's need arguments should not be entertained by this Court. Based thereon, Debtor argues that there is no need to analyze the intent of the State Court when it assigned the monthly advances to Debtor in the amount of $50,000.00 post-divorce decree. Debtor also points out that Creditor's arguments are the same as those she brought forth in the state court, which were rejected: that she has a right to alimony or support, independent of her rights as co-owner of the estate. Debtor also points out that Creditor's argument based on 31 L.P.R.A. § 3700 has no merit. More specifically, Debtor points out that § 3700 is only applicable to the case of a surviving spouse. Further, Debtor spotlights the fact that Creditor does not seem to have a need-based claim because she is an attorney with a law degree that owns a luxury home in Miami, Florida and that she is currently living with her boyfriend rent and expense free. Therefore, Debtor argues

7

that the Creditor qualifies for neither alimony nor support. Debtor further notes that the State Court in the Divorce Case is under the direction of the appellate court of determining the amount owed to Creditor. Therefore, Debtor argues that such analysis by the appellate court is to determine the amount of advances Creditor has in the community estate subject to return any excess Creditor may have received. In regards to the Division Case in the state Court, Creditor contested the evaluation of properties. Debtor contends that his request to this Court to modify the automatic stay to continue and resolve the issue of co-ownership of the bankruptcy estate was opposed by the Creditor so she could obtain her $50,000.00 advances without having to move forward for the determination of her rights in the Division Case. Debtor points out that he has already paid at least $2,500,000.00 to the Creditor and that the Creditor has allegedly spent all the funds she has received and thus receiving a return of the overpaid amounts would be unlikely. In regards to this instant case, Debtor argues that he has complied with the requirements of the Bankruptcy Code and that his plan anticipates a 100% repayment plus interest to all of his creditors. Debtor emphasizes that while domestic support claims are non-dischargeable and are entitled to priority under the Bankruptcy Code, the State Court stated that Creditor's allowance of $50,000.00 a month is only a right to advances from the community estate and not a domestic support obligation. Debtor further argues that Creditor does not bear the financial responsibility for their children and was provided with a separate and fulfilled alimony order during their divorce proceeding. Debtor cites <u>Sorah v. Sorah (In re Sorah)</u>, 163 F.3d 397 (6th Cir. 1998), that Courts discern the difference between "alimony" and "property distribution" by looking at three factors: (1) what is the label applied by the state court; (2) whether the payments are directed to the former spouse; and (3) whether the payments are contingent on the non-occurrence of

8

such events such as death of the obligor, remarriage, or receipt of social security benefits. In this instant case, Debtor argues that Creditor already received her alimony benefits and that the State Court labeled the $50,000.00 payments as "advanced payments" and not support. Citing Milligan v. Evert (In re Evert), 342 F.3d 358, 369 (5th Cir. Tex. 2009), Debtor points out that Creditor's right to participate in the community property has none of the hallmarks required in the determination of domestic support since Creditor's right to participate in the community property does not terminate as a result of remarriage nor does it terminate upon Debtor's death. Debtor further argues that the advanced payments here are not contingent on Creditor's present circumstances and thus cannot be said to be alimony payments. Further, Debtor argues that the $50,000.00 per month cannot be said to qualify as "need" since the amount represents advanced payments on a substantial portion of the estate. Conclusively, Debtor requests this Court to order the $50,000.00 per month as a property right rather than a domestic support obligation based on the arguments above and to order a hearing to estimate through expert testimony the amount, if any, earmarked for future property distribution to the spouse, for when the state court enters a final judgment on this issue.

Responding to Debtor's opposition, Creditor argues that although in Puerto Rico, there is no such thing such as advances for support, the Supreme Court of Puerto Rico has recognized the use of advances for the community assets pending division for the ex-wife support pursuant to Article 1325 of the Puerto Rico Civil Code, 31 L.P.R.A. § 3700. Creditor refers to her original Domestic Support Briefing [Dkt. No. 395] that the Puerto Rico Court of Appeals has recognized advances or Support Payments for support. Creditor further cites to In re Werthen, 329 F.3d 269, 273 (1st Cir. 2003), in which she argues that installment payments to be paid from the property division resulting from a

state court divorce judgment constitutes a Domestic Support Obligation. Further, Creditor argues that because there has been no agreement or judgment on the property settlement at this time, combined with the urgent need for such support[1], the $50,000.00 per month payment is to be considered as support. Conclusively, Creditor argues that both under Puerto Rico and federal bankruptcy law, advances from community assets to be distributed are to be considered as Domestic Support Obligations.

In reply to Creditor's response to Debtor's opposition, Debtor restates that Creditor's claim is not a Domestic Support Obligation and thus is a general unsecured claim and therefore is not entitled to any priority. Debtor argues that Creditor relied on a 2001 temporary restraining order to claim her Domestic Support Obligation and that such temporary restraining order expired upon the finality of the divorce decree along with the ongoing property distribution case. Debtor continues to argue that the State Court reaffirmed that the $50,000.00 monthly payments are advances in her alleged participation in the community property distribution. Debtor further points out that Creditor did not argue that her original or amended proof of claim is a Domestic Support Obligation claim, rather Creditor argued such on an addendum. Debtor further argues that Creditor took the State Court's opinion out of context and that the State Court did not hold that the $50,000.00 per month payment is to be considered alimony. Rather, Creditor took the quote from the portion of the State Court's opinion when the Court was describing temporary relief that was vacated by the Court of First Instance upon the finality of the divorce judgment. Debtor also argues that the State Court did not

---

[1] Creditor in raising this issue as she did in the original motion, mirrors her original argument. She, however, clarified that her only assets are her apartment in Miami, Florida (Ritz Carlton) along with its accompanying furnishings. Thus, her other assets

require "need" to be proven in order for the Creditor to partake on the community property assets division. Thus, Debtor argues that because the divorce was final to which alimony payments terminate upon such finality, Creditor cannot argue finality of divorce to continue alimony payments based on need. Regardless, Debtor clarifies that the only interest Creditor has is to partake in the community property assets division and nothing else. Alternatively, Debtor restates his original arguments that Creditor does not have a "need" because of Debtor's previous payments of over $2,500,000.00 and her current assets. Conclusively, Debtor also argues that under the comity clause, U.S. Constitution, Article IV, Section 2, Clause 1, this Court should give deference to state courts in its determination of Domestic Support Obligations. Debtor argues that because the Circuit Court of Appeals and the First Instance Court of Puerto Rico both identified such payments to be advances in the community property, this Court should honor that interpretation.

**II. Legal Analysis and Discussion**

After reviewing the arguments of the parties, and the relevant law, this court concludes that the $50,000.00 per month payment is most correctly characterized as a Domestic Support Obligation payment under the Bankruptcy Code.

This instant contention hinges on the issue of whether the $50,000.00 per month payment falls within 11 U.S.C. § 101(14A) entitled to priority claim status under 11 U.S.C. § 507(a)(1)(A), thus the analysis will be centered on such.

---

such as the 2005 car are part of the community property. Creditor further clarifies that she is heavily in debt and owes money to a mortgage bank as well as her friends and family.

11

**A. Federal Bankruptcy Code's Definition of "Support" Governs**

Section 507(a)(1) of the Bankruptcy Code, accords first-priority status for "[a]llowed unsecured claims for domestic support obligations that, as of the date of the petition, are owed to or recoverable by a spouse, a former spouse...." 11 U.S.C. § 507(a)(1)(A). Section 507(a)(1) was added to the Bankruptcy Code in 2005 and supersedes and replaces former Section 507(a)(7), which gave priority status to certain claims for alimony, maintenance and support. The term "domestic support obligation" is defined in the Bankruptcy Code under Section 101(14A), which provides:

> The term "domestic support obligation" means a debt that accrues before, on, or after the date of the order for relief in a case under this title, including interest that accrues on that   debt  as  provided  under applicable nonbankruptcy law notwithstanding any provision under this title, that is,
>
> (A) owed to or recoverable by—
>     (i) a spouse, former spouse, or child of the debtor ...
>
> (B) in the nature of alimony, maintenance, or support ... of  such spouse, former spouse, or child of the debtor ... without regard to whether such debt is expressly so designated;
>
> (C) established or subject to establishment before, on, or after the date of the order for relief in a case under this title, by reason of applicable provisions of—
>     (i) a separate agreement, divorce decree, or property
>         settlement agreement;
>    (ii) an order of a court of record ...
>
> (D) not assigned to a nongovernmental entity, unless that obligation is assigned voluntarily by the spouse, former spouse, child of the debtor, or such child's parent, legal guardian, or responsible relative for the purpose of collecting the debt.

12

Under the above definition of domestic support obligation, three out of the four requirements do not seem to be in dispute, namely that, (1) Debtor owed such debt to a former spouse, § 101(14A)(A); (2) Debtor's debt was established before the order for relief (i.e., petition date) by a divorce decree or an order of a court of record, § 101(14A)(C); and (3) Debtor did not assign his debt to a nongovernmental entity because Creditor has not assigned the debt to anyone, § 101(14A)(D). According, the parties in this instant case dispute the remaining element: whether the debt owed to Creditor is one in the nature of alimony, maintenance, or support under 11 U.S.C. § 101(14A)(B).

In this Circuit, in order to raise an obligation as a domestic support obligation, such obligation needs to be in the nature of support and thus must be provided for the upkeep of the recipient spouse and children. See Smith v. Pritchett (In re Smith), 586 F.3d 69, 73–74 (1st Cir.2009); Werthen v. Werthen (In re Werthen), 329 F.3d 269, 273 (1st Cir.2003); In re Micek, 473 B.R. 185 (Bankr.E.D.Ky. 2012) (In inquiry in determining whether a debt payable to a third party is a priority domestic support obligation is the nature of the debt rather than the identity of the creditor). The definition of "domestic support obligation" added to the Bankruptcy Code by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA) "encompasses debts that were considered alimony, maintenance or support under prior section 523(a)(5) [of the Bankruptcy Code], but is broader in several respects." 2 Resnick & Sommer, Collier on Bankruptcy, ¶ 101.14A at 101–93 (16th ed.2012); In re Perlis, 467 B.R. 240 (Bankr. N.D.Ga. 2012) (broad interpretation of domestic support obligations). Thus, this definition not only encompasses obligations owed to or recoverable by a spouse, former spouse or child of the debtor, or child's parent, legal guardian or responsible relative, but also obligations recoverable by a governmental unit and non-governmental

13

units if voluntarily assigned for purposes of collection. Id. The language in the prior provision for Domestic Support Obligations under §523(a)(5)[2] of the Bankruptcy Code states that in order for such obligation to be excepted from discharge "an obligation must have arisen 'in connection with a separation agreement, divorce decree or other order of a court of record, determination made in accordance with State or territorial law by a governmental unit, or property settlement agreement....' 4 Resnick & Sommer, Collier on Bankruptcy, ¶ 523.11 at 523–79 (citing former §523(a)(5)). Accordingly, the language of §101(14A) tracks the language of former 11 U.S.C. § 523(a)(5), this Court deems that case law interpreting such former statute is applicable in its construing of §101(14A). In re Werthen, 329 F.3d 269, 272 (2); Macy v. Macy, 114 F.3d 1, 2-3; Resnick & Sommer, Collier on Bankruptcy, ¶ 101.14A at 101–93—101–95; 4 Resnick & Sommer, Collier on Bankruptcy, ¶ 523.11 at 523–78—523–80. Therefore, a bankruptcy court must look for the substance and not only the form of the obligation.

The First Circuit has clarified that when determining the nature of a support claim, the intent of the parties, including any guidance provided by the state court, may be taken into account "whether the state court which entered the divorce decree and the parties who entered into a divorce agreement intended the award to serve as support or as 'something else,' such as a division of jointly

---

[2] Section 523(a)(5) in line with the twin goals of bankruptcy as discussed by this Court in In re Ramos, 12-08816, 2013 WL 2403489, n.5 (Bankr. D.P.R. June 4, 2013), serves important public policy considerations, as the Ninth Circuit Bankruptcy Appellate Panel clarified:

> [T]he protection of the spouse who may lack job skills or who may be incapable of working, the protection of minor children who may be neglected if the custodial spouse entered the job market, and the protection of society from an increased welfare burden that may result if debtors could avoid their familial responsibilities by filing for bankruptcy.

Kritt v. Kritt (In re Kritt), 190 B.R. 382, 388 (9th Cir. BAP 1995) (internal citations omitted).

14

owned property." Smith v. Pritchett (In re Smith), 398 B.R. 715, 721 (B.A.P. 1st Cir.2008), aff'd, 586 F.3d 69 (1st Cir.2009). Courts have provided guidance that when the record demonstrates the intent of the parties at the issuance of the divorce decree or the settlement agreement, such intent could necessarily be dispositive and thus controls in a court's determination of the nature of such claim. In re Sternberg, 85 F.3d 1400, 1405 (9th Cir. 1996) (overruled by In re Bammer, 131 F.3d 788 (9th Cir. 1997) on other grounds); Brody v. Brody (In re Brody), 3 F.3d 35, 38 (2d Cir.1993); In re Hale, 289 B.R. 788, 791, fn. 4 ("The §523(a)(5) inquiry goes to whether the parties to the agreement establishing the obligation in question bilaterally intended it to function as support (or whether the court imposing judgment did)"). On the other hand, when the divorce decree or the settlement agreement is ambiguous, courts are to look to extrinsic evidence. In re Yeates, 807 F.2d 874, 878 (10th Cir. 1986). The First Circuit has not yet "adopted a specific multi-factor test used to discern intent when determining whether an obligation is in the nature of support." Thus, Circuit guidance suggests that "'[a]s in all fact intensive inquiries, the critical factors depend on the totality of the circumstances of a particular case...." In re Smith, 586 F.3d at 74. Regardless, courts in our sister Circuits, specifically those in the Second, Third, Fourth, Eighth, and Ninth, through a survey of relevant case law, provided additional non-exhaustive indicators to be used within the totality of circumstances test given by the First Circuit that courts should look to when discerning the particular ambiguous nature of a claim. Incorporating the guidance from our sister Circuits into our guidance from the First Circuit, this Court finds that courts explore a total of ten indicators when determining the nature of Domestic Support Obligation: (1) language and substance of the state court's order and thus the characterization of the payment in the decree and the context in which the disputed

15

provisions appear; (2) the parties' financial circumstances at the time of the order and thus whether the recipient spouse actually needed spousal support at the time of the divorce; (3) whether an assumption of a debt or creation of an obligation has the effect of providing the support necessary to ensure that the daily needs of the former spouse and any children of the marriage are met and to ensure a home for the former spouse and any minor children; (4) whether the parties intended to create an obligation of support; (5) the function served by the obligation at the time of such order; (6) whether the labels given to the payments of the parties may be looked at as evidence of the parties' intent; (7) whether there was an imbalance in the relative income of the parties at the time of the divorce decree and thus whether the payment appears to balance disparate income; (8) whether the obligation terminates on the death or remarriage of either spouse; (9) whether the payments are made directly to the recipient spouse in a lump sum and are paid in installments over a substantial period of time; (10) whether the payments are to be made directly to the former spouse or to a third party. Id. See In re Soforenko, 203 B.R. 853, 859 (Bankr. D. Mass. 1997) (collecting cases in the First Circuit discerning intent); In re Sternberg, 85 F.3d at 1405 (citations and internal quotation marks omitted); In re Kaufman, 115 B.R 435 at 440–41 (Bankr. E.D.N.Y.1990); See In re Phegley, 443 B.R. 154, 158 (8th Cir.BAP2011) (analyzing a 6–factor test); In re Daulton, 139 B.R. 708, 710 (Bankr.C.D.Ill.1992) (following a 20 factors test); In re Deberry, 429 B.R. 532, 539 (Bankr.M.D.N.C.2010) (listing non-exclusive four factor test); In re White, 408 B.R. at 681 (analyzing a 5–factor test). Accordingly, this Court will observe the above non-exhaustive indicators as well as implement the totality of circumstances test as mandated by the First Circuit. In re Smith, 586 F.3d at 74. First the court will examine the nine indicators as discussed above.

In regards to the third, fourth, and fifth factors, this Court finds that there is ambiguous or contradicting evidence in the record for it to make adequate determination on these indicators. Therefore, this Court will proceed to explore the others in light of judicial economy.

In regards to the first, second and sixth indicators, this Court notes that the State Court, in the Divorce Case, points out that Debtor's assets as of 2001, the time of divorce, are estimated at $178,000,000. Although some amounts were acquired by inheritance and may not be included in the calculation of community property assets, this Court nonetheless finds that the Debtor is in a substantially better position financially than the Creditor. The Divorce Opinion further notes that the $50,000.00 per month payment is to be used towards Creditor's support and maintenance of her property. Although Debtor points out that Creditor is not responsible for the ex-couple's children, she nonetheless, per the analysis provided by the State Court, needed such funds for her self-maintenance. Therefore, these indicators weigh in favor of the Creditor. With respect to the seventh indicator, whether the obligation terminates on death or remarriage, Debtor points out that Creditor has remarried and now benefits from co-habilitating with her new spouse. This Court, however, because the parties did not provide any instruments demonstrating the effects of remarriage, cannot conclude that remarriage necessarily changes the nature of the Debtor's $50,000.00 per month obligation for Domestic Support. Accordingly, this factor weighs in favor of the Creditor. In assessing the eighth and ninth indicators, this Court recognizes that monthly installment payments rather than a lump sum payment are indicative of an intent for making support, while at the same time, typical "support" payments are temporary and/or modifiable to compensate for changed

17

circumstances. Further, these payments are paid to the Debtor's ex-spouse instead of a third party. Consequently, this Court finds the above factors to weigh in favor of the Creditor.

Assuming *arguendo* that this Court finds the third, fourth and fifth indicators to be in favor of Debtor, in exercising the totality circumstances test provided by the First Circuit, this Court still finds that the evidence tilts in finding the $50,000.00 per month payment is more correctly considered a Domestic Support Obligation. This Court must note that in exercising its independent discretion under the totality of circumstances test, in deciding whether a support payment carries non-priority status, this Court participates in a weighing between the goal of providing the Debtor a 'fresh start', which mandates that exceptions to discharge be confined to those plainly expressed, and an overriding public policy favoring the enforcement of familial obligations. Marrama v. Citizens Bank of Mass., 549 U.S. 365, 367, 127 S.Ct. 1105, 166 L.Ed.2d 956 (2007) (quotations and citations omitted) ("The principal purpose of the Bankruptcy Code is to grant a 'fresh start' to the honest but unfortunate debtor."); Goldberg Secs., Inc. v. Scarlata (In re Scarlata), 979 F.2d 521, 524 (7th Cir.1992) (Discharge exceptions are to be generally construed strictly against a creditor and liberally in favor of the debtor.). Thus, if Creditor no longer has a present urgent need for support, but regardless is still collecting the debt imposed by the divorce judgment, this would significantly impair Debtor's 'fresh start' upon a discharge of debts in his bankruptcy case. This Court further recognizes that the First Circuit's refusal to confine this instant issue into a factor-by-factor test reinforces the First Circuit's intent for a more elastic evaluation of such issue.

18

**B. State Law Considerations**

Although state law mandates the determination of the duty to support, federal law nonetheless controls whether the duty or agreement is nondischargeable. William L. Norton, Jr., 3 Norton Bankr.L. & Prac.3d § 57.30 (2013); In re Perez, 12-03808, 2013 WL 959842 (Bankr. D.P.R. Mar. 12, 2013); 1–6 Collier Family Law and the Bankruptcy Code ¶ 6.03[1] and [2] ("... the legislative history of the Bankruptcy Code definitively resolved the issue of whether federal law or state family law determines whether a particular obligation is in the nature of alimony, maintenance or support, and therefore a nondischargeable domestic support obligation. The resolution of that question must be based upon principles of federal law"). Therefore, labels used for certain obligations by the state court or the parties are not necessarily controlling for Bankruptcy Code purposes. See In re Werthen, 329 F.3d 269, 272-73 (1st Cir. 2003); Dennis v. Dennis (In re Dennis), 25 F.3d 274, 278 & n. 5 (5th Cir.1994) (citing a string of cases establishing that bankruptcy courts refuse to treat state court law labels as controlling); In re Werthen, 329 F.3d 269, 273 (1st Cir. 2003); 1–6 Collier Family Law and the Bankruptcy Code ¶ 6.03[2] ("Thus, the fact that state law characterizes a particular obligation as support or property settlement is not binding on the bankruptcy court"). Regardless, bankruptcy courts in this Circuit have recognized that even though state law is not controlling, a bankruptcy court should look to state law for guidance in determining whether a particular obligation is in the nature of support or a property settlement; since virtually the whole subject matter of familial support is within the domain of state law and there is no federal law of domestic relations. In re Perez, 12-03808, 2013 WL 959842 (Bankr.D.P.R. Mar. 12, 2013) (quoting 1–6 Collier Family Law and the Bankruptcy Code ¶ 6.03[2]) (quotations omitted); Siragusa v. Siragusa (In re Siragusa), 27 F.3d 406,

19

408–409 (9th Cir.1994) ("Notwithstanding the above, when the state court domestic relations action is pending at the time of the debtor spouse's bankruptcy proceeding, the bankruptcy court has discretion—in the interest of "comity"—to defer to the state court's decision that a debt owing to the non debtor spouse is nondischargeable 'support.'"); Fair Assessment in Real Estate Ass'n, Inc. v. McNary, 454 U.S. 100, 103, 102 S. Ct. 177, 179, 70 L. Ed. 2d 271 (1981) ) ("[F]undamental principle of comity between federal courts and state governments that is essential to 'Our Federalism'"); see generally Matthews v. Rodgers, 284 U.S. 521, 52 S.Ct. 217, 76 L.Ed. 447 (1932); Singer Sewing Machine Co. v. Benedict, 229 U.S. 481, 33 S.Ct. 942, 57 L.Ed. 1288 (1913); Boise Artesian Water Co. v. Boise City, 213 U.S. 276, 29 S.Ct. 426, 53 L.Ed. 796 (1909).

The State Court in its Divorce Decision [Dkt. 234-2, 234-3] specified that the sum of $50,000.00 per month is to be established for Creditor's "enjoyment of property and cash amount that would enable her to *maintain herself*, which [Debtor] shall pay to [Creditor]." Further, the State Court itemized the monthly amount to be the following: "a) Additional liquid sum in the amount: $30,000.00 (b) *Plus* the enjoyment and administration of the property that [Creditor] has in Florida, USA; *and* (c) The alimony she receives by order of the Court of Florida, USA." Above and beyond the above-ordered payment, the Divorce Decision also mandated an additional $50,000.00 to be granted to the plaintiff for litigation related expenses including attorney fees, accounting fees, transcriber and other associated costs. This Divorce Decision reveals that the State Court intended the $50,000.00 per month to be used towards three items: (1) Creditor's self-maintenance; (2) maintenance of the Florida property; and (3) to satisfy alimony from the former Florida state court decision.

Article 1325 of the Puerto Rico Civil Code, 31 L.P.R.A. § 3700, on the topic of surviving spouse and children support states:

> Support shall be given out of the property owned in common to the surviving spouse and to his or her children, pending the liquidation of the inventoried estate and until their share has been delivered to them, but it shall be deducted from their portion insofar as it exceeds what they should have received as fruits or income.

Puerto Rico state case law further reveals through its interpretation of Article 1325 of the Puerto Rico Civil Code, 31 L.P.R.A. § 3700, that a former spouse through death or divorce is entitled to receive from her husband a payment for food and court costs as determined by the final judgment set forth in her participation in the asset liquidation suit with her ex-spouse. Janer Vila v. Superior Court, 90 DPR 281, 301 (1964); Perez v. District Court, 69 DPR 4, 21-22 (1948). The reason for this judicial extension of Article 1325 to a divorced former spouse is because both death and divorce ultimately dissolves a marriage, and thus both events should be given the same effects for the purpose of support. Id; see also Robles Colon v. Bustelo Garriga, KLCE200801220, 2008 WL 5586701 (P.R. Cir. Dec. 19, 2008) at *4; Balasquide Ruizdelgado v. Alvarado Torres, KLAN200901837, 2010 WL 4792138 at *2 (P.R. Cir. Aug. 26, 2010); Manuel Albaladejo, Reviews and Compilations Civil Code Councils, Volume XVIII, 1999, p. 657-659). The Puerto Rico Court of Appeals further clarifies "to apply Article 1325 of the Civil Code you need two conditions: (1) that there existed between the surviving spouse and the deceased a legal conjugal partnership, and (2) and that said legal conjugal partnership has not been liquidated." Espino Alicea v. Lozada Valentin, KLAN0801351, 2008 WL 5771415 (P.R. Cir. Nov. 24, 2008) (quoting Dist v Anselmo Garcia. Sucn. Anselmo Garcia, 153 DPR 427, 435 (2001)). To frame the above more simply, the former spouse's

21

right of payment takes place from the time of dissolution of such conjugal property until the performance of settlement is perfected. Balasquide Ruizdelgado v. Alvarado Torres, KLAN200901837, 2010 WL 4792138 at *2 (P.R. Cir. Aug. 26, 2010) (citing Dist v Anselmo Garcia. Sucn. Anselmo Garcia, 153 DPR 427, 435 (2001)); see also Santana Santana v. Santiago Rios, KAC1997-1171908, 2006 WL 3292668 (P.R. Cir. Oct. 23, 2006); Umpierre Matos v. Juelle Abello, KLCE201101182, 2012 WL 1358468 (P.R. Cir. Feb. 21, 2012). However, such advanced payments that are deemed to be in excess of the ex-spouse's entitlement to the community assets are to be returned to the community assets. Robles Colon v. Bustelo Garriga, KLCE200801220, 2008 WL 5586701 (P.R. Cir. Dec. 19, 2008) (citing Dist v Anselmo Garcia. Sucn. Anselmo Garcia, 153 DPR 427, 435 (2001)). When the ex-spouse lacks a right to community property or that there is no community property to be divided, Article 109 of the Puerto Rico Civil Code 31 L.P.R.A. § 385 establishes an alternative channel of relief an ex-spouse may seek. Article 109 states that an ex-spouse can claim a pension if he or she does not have sufficient means to live. Balasquide Ruizdelgado v. Alvarado Torres, KLAN200901837, 2010 WL 4792138 at *2 (P.R. Cir. Aug. 26, 2010) (analyzing a non-exhaustive 8 factor test on whether the former spouse is entitled to a pension). Accordingly, Puerto Rico case law acts in the fashion that *ex specialis derogat legi generali-* specific law takes away from the general law and thus this Court must recognize such state case law interpretations of the Civil Code.

### C. Totality of Circumstances Analysis Applies

Upon exercising its independent judgment in determining the intent of the parties, this Court has considered state law for guidance on the question of whether the State Court had intended to base

22

the award of support on need. However, this Court finds that the state law concept of "support" is indeed consistent with the policy behind the definition of support found in the Bankruptcy Code, which expresses concern for a recipient spouse who cannot work, the potential for children to be neglected if the recipient spouse does work, and an increased burden on the welfare system. See In re Kritt, 190 B.R. 382, 388 (B.A.P. 9th Cir. 1995) (internal quotations omitted). Debtor argues that Creditor could work as she is a licensed lawyer and along with the fact that she does not care for the ex-couple's children, she would not necessarily be a burden on the welfare system. In response, Creditor argues that she has been a housewife for a number of years now and that she has not been engaged in the practice of law. Nonetheless, even with the above contentions, this Court must take into consideration the language utilized by the State Court in exercising its independent judgment on this issue: "maintain herself," "enjoyment of property," and "alimony," which tips the scales toward the finding that the $50,000 monthly payment was to be for domestic support.

Incorporating the above Puerto Rico Civil Code findings into our analysis that ex-spouses are entitled to support from the time of dissolution of such conjugal property until the performance of settlement is perfected, this Court finds such amount to be leaning towards those resembling domestic support payments as defined by the Bankruptcy Code. This finding is based on the parties' mutually agreed facts that the Division Case is still pending as of this day in the Puerto Rico state court, years after the resolution of the Divorce Case. This Court reiterates the fact that although state law may characterize a particular obligation as support or property settlement, this determination is not binding on the bankruptcy court.

**III.  Conclusion**

Summarily, based on the above reasoning, this Court finds the $50,000.00 per month payment to be a Domestic Support Obligation within the definition provided in the Bankruptcy Code. This instant memorandum serves as the court's findings of facts and conclusions of law. Acting in accordance with the relevant issue resolved at hand, this Court recognizes the latin maxim *Fiat justitia ruat caelum*—let justice be done though the heavens fall—and moves on to the next case to provide justice to the next litigant in line, on a crowded docket. See e.g., In re Aledria Corp., 10-12310 BKT, 2013 WL 1619998 (Bankr. D.P.R. Apr. 15, 2013); Starski v. Kirzhnev, 682 F.3d 51, 56 (1st Cir. 2012).

SO ORDERED

San Juan, Puerto Rico, this 28th day of June, 2013.

Brian K. Tester
U.S. Bankruptcy Judge

24