**IN THE UNITED STATES BANKRUPTCY COURT FOR**

**THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| IN RE: | **CASE NO. 11-2466 (MCF)** |
| **DAVID EFRON** | **CHAPTER 11** |
| Debtor | **FILED & ENTERED ON 04/17/2014** |

## OPINION AND ORDER

Before the Court are two Orders to Show Cause as to (1) why the Court should not abstain from hearing this case which is essentially a two party dispute regarding the division of marital property and therefore serves no bankruptcy purpose and (2) why the case should not be dismissed for failure to pay post-petition domestic support obligations ("DSO"). For the reasons stated herein, the Court abstains from hearing this case pursuant to 11 U.S.C. § 305(a)(1)[1] and as a result the case is dismissed. In the alternative, the case is dismissed pursuant to 11 U.S.C. § 1112(b)(4)(E) and (P) for Debtor's failure to comply with an order of the court requiring the payment of post-petition DSO obligations.

## I - PROCEDURAL HISTORY

David Efron ("Debtor") and Madeline Candelario ("Candelario") were married until a divorce judgment was issued by the Commonwealth of Puerto Rico, Court of First Instance, San Juan Part, on May 3, 2001. The local court ordered Debtor, who controls the assets, to pay a monthly sum of $50,000 to Candelario as an advance of her participation in the division of the

---

1. Unless otherwise indicated, all statutory references are to title 11 of the United States Code, 11 U.S.C. §§ 101, et seq., as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8 (the "Bankruptcy Code").

marital property in order for her to support herself until the proceedings finalized. (Docket No. 234, Exhibit No. 3)  For the past thirteen years, Debtor and Candelario have engaged in fierce litigation that is still on-going with regards to the division of marital property and the order mandating $50,000 monthly payments to Candelario.

On March 25, 2011, almost ten years after the divorce judgment, Debtor filed for Chapter 11 bankruptcy protection, mainly to stay the order of execution to enforce the $50,000 monthly payment imposed by the local court and to stay the division case.[2]  On June 28, 2013, more than two years into this extremely contested bankruptcy case, this Court determined that the $50,000 monthly payment ordered by local court is considered a DSO as defined by 11 U.S.C. § 101(14A). (Docket No. 547).  Debtor has consistently refused to make the monthly DSO payments.  Instead, he chose to appeal the Court's order that defined the $50,000 monthly payment as a DSO and requested a stay pending appeal. (Docket Nos. 554 & 565).  On October 23, 2013, the Court denied the stay pending appeal and ordered Debtor to make post-petition DSO payments immediately. (Docket Nos. 577, 618 & 674).

After the appeal was dismissed as interlocutory, the Court scheduled a hearing for December 18, 2013, to consider whether: (1) an agreement had been reached by the parties, (2) Debtor has proposed an alternate plan that considers Candelario's claim as filed, in the event she prevails in the local court litigation wherein the community property is being divided, or (3) the case should be converted or dismissed. (Docket Nos. 554 & 674).  Upon the designation of a new bankruptcy judge, the hearing was re-scheduled for January 22, 2014.  Before addressing previously scheduled matters, the Court inquired about the bankruptcy purpose of the case.  After hearing from the parties, the Court ordered Debtor to show cause as to  why the Court should not abstain from hearing this case for being a two party dispute regarding the division of marital property which serves no bankruptcy purpose. (Docket No. 773, at 3). The Court allowed any party that wanted to be heard on the matter of abstention to file a motion.  The parties were also informed that any order, including the DSO

---

2.  See Transcript of hearing held on January 22, 2014, Docket No. 773, at 4.

2

ruling, issued by the previous bankruptcy judge would not be revisited and the Court would strictly adhere to the law of the case. All other matters were held in abeyance until the order to show cause is resolved. (Docket No. 771).

Debtor filed his motion in compliance with the Court's order and Candelario and UBS Financial Services of PR Incorporated ("UBS") filed their respective positions regarding the issue of abstention. (Docket Nos. 777, 784 & 785). On March 7, 2014, the Court entered a new order to show cause as to why the case should not be dismissed for failure to pay monthly post-petition DSO of $50,000 pursuant to the opinion and order dated June 28, 2013[3] (Docket No. 547). Debtor appealed the Court's second order to show cause which was dismissed for being interlocutory. (Docket Nos. 790 & 799). Thereafter, he filed a response to the second order to show cause on March 25, 2014, with no evidence of payment of the outstanding post-petition DSO.[4] (Docket No. 801).

## II - ABSTENTION

There are two statutory bases for abstention applicable to the bankruptcy context, 11 U.S.C. § 305 and 28 U.S.C. § 1334(c). Under § 305(a), the court may either dismiss a case or suspend all proceedings within the case.[5] On the other hand, 28 U.S.C. § 1334(c) provides for abstention from particular proceedings.[6] Under 28 U.S.C. § 1334(c)(1), the court may, abstain from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11, in the interest of justice or in the interest of comity or respect for state law.[7] While 28 U.S.C. § 1334(c)(2) allows abstention from proceedings based on state law related to a Chapter 11 case when the action has commenced and can be adjudicated in a state forum.[8] If abstention is sought in relation to a particular contested matter or adversary proceeding, 28 U.S.C. § 1334(c) is the proper vehicle; if abstention seeks suspension or dismissal of all proceedings within a case, § 305(a) should be

---

3. The Court specifically requested evidence of payment of post-petition DSO for at least $1,850,000 (37 months in bankruptcy multiplied by $50,000 per month).
4. Debtor failed to provide evidence and reiterated that he did not owe any DSO to Candelario.
5. 11 U.S.C. § 305(a).
6. 28 U.S.C. § 1334(c)(1) and (2).
7. 28 U.S.C. § 1334(c)(1).
8. 28 U.S.C. § 1334(c)(2).

invoked. Andrus v. Ajemian (In re Andrus), 338 B.R. 746 (Bankr. E.D. Mich. 2006). In the present case, there is no pending adversary proceeding before the Court. As a result, the proper abstention avenue for this bankruptcy case is 11 U.S.C. § 305(a).

### A.     Abstention under § 305(a)(1)

Section 305(a)(1) of the Bankruptcy Code provides that the court, after notice and a hearing, may dismiss or suspend all proceedings, at any time if the interests of creditors and the debtor would be better served by such dismissal or suspension. 11 U.S.C. § 305(a)(1). In general, § 305 grants significant discretion to the bankruptcy courts to decline, in certain circumstances, to exercise jurisdiction over a case filed under title 11 even when jurisdiction is otherwise appropriate. Alan N. Resnick & Henry J. Sommer 2-305 Collier on Bankruptcy ¶ 305.01 and ¶ 305.02 (2014)[hereafter referred to as "Collier on Bankruptcy"]. While it is true that the application of § 305(a) is an extraordinary remedy, its application is appropriate when the interests of the creditors and the debtor are best served by dismissal or suspension. In re Mazzocone, 200 B.R. 568, 575 (E.D. Pa. 1996). Section 305(a)(1) applies in any case, voluntary or involuntary. In re Colonial Ford, Inc., 24 B.R. 1014, 1020 (Bankr. D. Utah 1982).

The issue of abstention under § 305 can be raised by the court upon its own motion. In re ELRS Loss Mitigation, LLC, 325 B.R. 604, 634 (Bankr. N.D. Okla. 2005). As stated above, the court may dismiss or suspend a bankruptcy case, after notice and a hearing. Under § 102(1)(A) of the Bankruptcy Code, the phrase "after notice and a hearing" means after such notice and hearing as is appropriate in the particular circumstances." 11 U.S.C. § 102(1)(A). In other words, the court is not required to hold an actual hearing. The parties herein have had ample opportunities to be heard on the abstention issue and the Court did not receive any new information or argument in response to its orders to show cause that were not a rehash of previously presented arguments.

The decision to abstain under § 305(a) is to be done on a case by case basis[9] and should be guided by the best interest of all parties. 11 U.S.C. § 305(a)(1). Courts have used different factors

---

9. In re Duratech Indus. Inc., 241 B.R. 283, 287 (E.D.N.Y. 1999).

when analyzing whether abstention would be in the best interest of both the debtor and creditors. The exact factors to be considered and the weight to be given to each of them are highly sensitive to the facts of each individual case. Mazzocone, 200 B.R. at 575. Some of the factors considered by other courts applicable to our case are (1) an absence of a bankruptcy purpose, (2) cases where there is a pending state law proceeding, (3) another forum is better suited to see the case, (4) efficiency and economy of administration and (5) the case is a two party dispute.[10]

The absence of a true bankruptcy purpose (e.g., debt adjustment, breathing spell from creditors, and need for discharge and fresh start) is a significant factor in favor of granting § 305(a)(1) relief. Collier on Bankruptcy ¶ 305.02.

Courts have generally ruled in favor of abstention when the parties have access to a state court forum and the possible advantage of that forum over a bankruptcy court. Bankruptcy courts should abstain when that forum has a particular expertise which is relevant to the matters in dispute. In re T.D.M.A., Inc., 66 B.R. 992, 995 (Bankr. E.D. Pa. 1986).

Most bankruptcy courts applying § 305(a)'s dismissal provisions consider the effect of keeping a particular case in bankruptcy on the basis of efficiency and economy of the judicial system as a whole since a cause of action should only be heard once. In re Owen-Johnson, 115 B.R. 254 (Bankr. S.D. Cal. 1990). "Other factors to consider are whether resolution of case involves interpretation of state law, and whether interests of justice and comity prevail." Id. at 257.

Although the bankruptcy court has broad jurisdictional powers under the Bankruptcy Code, Congress did not intend it to become a court of general jurisdiction where any matter is heard as long as debtor is somehow involved. In re Palmer Constr. Co., 7 B.R. 232 (Bankr. D. S.D. 1980). However, if the action involves administration or property of debtor's estate the matter should be heard in the bankruptcy court. Id. at 233. The bankruptcy court will exercise its right to abstain where no justifiable reason can be demonstrated as to why the court should hear the matter, and where state court is more convenient and better suited forum to resolving issues. Id. The Bankruptcy

---

10. See, e.g., In re Costa Bonita Beach Resort, 479 B.R. 14 (Bankr. D.P.R. 2012); In re Seff Enters. & Holdings, LLC, 2010 BNH 11 (Bankr. D.N.H. 2010); ELRS Loss Mitigation, 325 B.R. at 634; In re Spade, 258 B.R. 221, 231 (Bankr. D. Colo. 2001); Mazzocone, 200 B.R. at 575.

Court for the District of Rhode Island came to the same conclusion when it determined that the case before it was a classic two party dispute that involved solely state law issues that were currently pending before the Rhode Island Superior Court. In re Silver Spring Ctr., 177 B.R. 759, 760 (Bankr. D.R.I. 1995).

Dismissal or suspension of a case may be appropriate when the bankruptcy case constitutes a two-party dispute between the debtor and a single creditor. For instance, the bankruptcy court must abstain by where it is "evident that case is not really bona fide insolvency proceeding" and "is nothing but an extension and rehash of bitter domestic contest between feuding spouses primarily centered around property settlement, alimony and custody of children, all matters which are still properly before [other] courts." In re Evans, 8 B.R. 568, 572 (Bankr. M.D. Fla. 1981). The Bankruptcy Court for the Southern District of Florida dismissed a voluntary Chapter 11 case under § 305(a)(1) where the primary purpose of the case was to block the ex-wife of debtor's president in her effort to collect alimony, where "no useful or beneficial purpose is likely to be achieved for debtor" where "it is certain to bear substantial expense the longer the case lasts" and "it is equally apparent creditors are being delayed without any corresponding benefits." In re Danehy Dev. Corp., 27 B.R. 727, 728 (Bankr. S.D. Fla. 1983).

The Bankruptcy Court for the Western District of Virginia determined that abstention under § 305 was warranted where debtor filed his Chapter 7 case shortly after the state appellate court affirmed the state trial court's decision dealing with support, maintenance, property settlement, and final divorce of the parties. The appellate court agreed that debtor's sole purpose for filing bankruptcy was to confront the state court's decision, which was reached after four years of litigation. The court determined that the matters should be resolved by the state court since virtually all issues arise out of domestic state-court proceedings and any action sought by debtor in bankruptcy would be counter to foregoing decisions. Branham v. Davis,149 B.R. 406, 409 (Bankr. W.D. Va. 1992).

### III - ANALISIS

The Court heard from Debtor, Candelario and UBS on the issue of abstention.  No other creditor or party in interest chose to be heard on the matter.  In his reply to the order to show cause, Debtor tries to justify the existence of this case by alleging that the confirmation of a plan and determinations of claims are core matters, that he has presented a confirmable plan and that the Court should not permissively abstain under 28 U.S.C. § 1334(c) since it is not in the best interest of creditors and the estate.  Debtor does not address why the Court should not abstain from hearing this case under § 305.

Candelario relies on In re Asousa, 276 B.R. 55 (E.D. Pa. 2002), to support her position against abstention.  The Bankruptcy Court for the Eastern District of Pennsylvania in Asousa sets forth several factors in order to determine whether abstention under 28 U.S.C. § 1334(c)(1) and 28 U.S.C. § 1334(c)(2) should proceed.  The laundry list of factors analyzed by Candelario in her brief to support her position against abstention is limited to 28 U.S.C. § 1334(c).  However, as previously stated § 1334(c) is limited to specific proceedings and not to abstention from the entire case.  Candelario argues that the Court has "de facto" abstained from hearing the division case since the automatic stay was modified in order to continue with the local court case.  Candelario's analysis under § 305 is limited to the fact that the Court should be judicious in its application.

UBS submits that its interests would be better served if Debtor were to remain in bankruptcy because it would promote a more expeditious and efficient resolution of an on-going case involving UBS and Candelario before the U.S. District Court for the District of Puerto Rico.  It also alleges that UBS should not have to wait until the outcome of the local court division case to collect on any potential liability incurred by Debtor.

The Court finds that this case serves no bankruptcy purpose since this is essentially a two party dispute between two bitter ex-spouses, who have engaged in over thirteen years of battle regarding the division of their community property.  Without the final resolution of the matters

7

between the ex-spouses in local court, the bankruptcy case will not move forward. It is unclear which assets are part of Debtor's estate due to the pending local court litigation which involves matters on both inheritance law as well as family law. As such, post-petition DSO will continue to accrue and a plan cannot be confirmed. Unlike the local court, the bankruptcy court is not specialized in family law and inheritance law. Deference must be given to the local court, considering they are addressing matters concerning local law and they are most familiar with the dispute because they have handled the divorce case and the division case since its inception.

This case is being held hostage by the excessive litigations involving Debtor and Candelario. Virtually every motion filed by Debtor was objected to by Candelario and vice versa. The parties were offered the opportunity to mediate, but one of the parties declined. (Docket No. 773). During the pendency of this bankruptcy case, Debtor and Candelario have spent excessive resources to litigate matters that they are also litigating in other forums. [11] Having multiple litigations does not foster judicial economy. It is a waste of judicial resources and the parties are incurring in needless fees and costs by fighting in several forums. The parties' actions have not yielded any positive result for creditors or the estate. Considering that Debtor is proposing to pay creditors 100% of their claims and that no agreements made in the bankruptcy case will be affected the parties will not be adversely affected by dismissal. [12] To this date, Debtor has successfully ignored orders of several courts to pay $50,000 per month to Candelario. "Because the Debtor thinks it would be happier in the Bankruptcy Court, does not entitle it to be here." Silver Spring, 177 B.R. at 760.

Although all three parties oppose abstention, they fail to establish why its in the best interest to continue with this case. Candelario's arguments are based on punitive motivations inspired by Debtor's past and current actions, not based on the best interest of all parties involved in the bankruptcy case. Candelario alleges that abstention may operate as a de facto injunction against attempts to collect her post-petition DSO payments.[13] On the contrary, Candelario can properly

---

11. A brief review of the applications for compensation filed by professionals in this case will show that Debtor has incurred in excess of $350,000 in attorney's fees, excluding fees for special counsels. If the examiner's fees, accountant's fees and other professional's fees were to be considered this amount would easily surpass $500,000. Candelario has also expressed concerns about her mounting litigation expense in Docket No. 785, at 16.
12. This was proffered by Debtor on Docket Nos. 741 and 742.
13. See Docket No. 785, at 12.

8

pursue her actions for division of marital property and collection of the monthly payments of $50,000 in local court. Although the automatic stay was modified, Candelario was barred from executing any judgment against estate property. With a dismissal, she is able to collect any judgment in her favor. She can concentrate her resources and efforts in just one forum. The local court is most familiar with their thirteen year long litigation and has a specialized knowledge of the Puerto Rico Civil Code and applicable laws pertaining to family law and inheritance law, especially in light of the fact that Debtor alleges that most of his estate was inherited during the marriage and therefore it is not community property.

Debtor's position against abstention is conveniently inconsistent. When faced with possible conversion to Chapter 7, Debtor admits in his pre-trial report that his bankruptcy case is essentially a two party dispute.[14] Debtor also admitted that state court litigations are on-going, that no creditors will be affected by a dismissal since "no rights granted [under the bankruptcy case] will be lost if the case is dismissed" and that "dismissal would be in the best interest of creditors."[15] Yet he ignores those same arguments while requesting that the case be kept active. In essence, Debtor agrees to factors that would favor abstention, but only when faced with a third alternative that is less to his liking, such as, conversion to Chapter 7.

Debtor argues that confirmation of the plan and determination of claims are core matters that should be resolved by the bankruptcy court. However, determination of Candelario's claims and their effect on the confirmation of the plan are subject to the resolution of the local court case. As a result, pursuing relief in bankruptcy court has guided the parties to a dead-end street. The fact that Debtor proposes a one hundred percent plan reflects that there is no real need for reorganization regarding any creditor other than Candelario. In the meantime, while Debtor and Candelario continue to bicker, all other creditors idly wait to collect on their claims.

UBS' arguments are related to a litigation against Candelario, not against Debtor. Moreover, UBS' motion is a by-product of the hostile divorce and division proceedings between Debtor and

---

14. See Docket No. 742, at 11. See also Docket No.773, at 7.
15. See Docket No. 742, at 11.

Candelario. The UBS litigation is on-going in U.S. District Court for the District of Puerto Rico and may give rise to an amended claim against Debtor.[16] Until the District Court litigation between UBS and Candelario has concluded and the amounts of the judgment and attorney's fees are determined, Debtor's possible contractual liability is disputed and speculative. Therefore, at present, UBS is a contingent claimant in the instant bankruptcy case. Moreover, the fact that the litigation between Candelario and UBS is on-going also favors abstention. UBS' proposal that the bankruptcy case remain open, to determine whether it has a legitimate claim against Debtor in the future, is disingenuous.

The Court determines that abstention is the best course of action for the benefit of all parties involved in this case. Creditors will no longer have to watch two parties incur in vexatious and hostile litigation without collecting on their claims. Debtor concedes that any agreements reached with creditors in bankruptcy will not be affected if the case is dismissed and that no major issues with creditors other than Candelario exist. Therefore, creditors can address any issue they have with Debtor outside of bankruptcy without being prejudiced. All parties including Debtor and Candelario will save the unnecessary and duplicative costs related to this case including administrative expenses and expenses related to parallel litigations which are burdensome to unrelated creditors. Monies from the estate are being used to pay professionals, not the creditors in this case. The local court is the most appropriate forum to address this two party dispute based on local law because of its expertise in family law, inheritance law and its familiarity with their case. Additionally, both Debtor and Candelario will benefit from hearing this case in the local court since, after thirteen years, it is definitely in a more advanced stage than our bankruptcy case which in turn depends on the local court case. Both Debtor and Candelario can move the local court accordingly with regards to the division and monthly payment since the case is on-going. The parties and this Court will benefit by limiting the possibility of contradictory rulings or outcomes and the resources of the Court are not drained by the continuous filings of motions, which will allow it to concentrate

---

16. The proof of claim filed by UBS includes a contingent claim for amounts UBS may have to pay to Candelario and a claim for UBS's legal fees and expenses incurred in the District Court case. Nonetheless, all remedies requested by UBS are contingent since the amount to be paid by UBS to Candelario, as well as its legal fees and expenses are subject to the conclusion of that civil proceeding. (Proof of Claim #11 as amended).

its efforts on cases that do serve a bankruptcy purpose. As a result, no party will lose any rights or be adversely affected by the dismissal.

## IV - DISMISSAL UNDER § 1112

We now turn our attention to the order to show cause for DSO entered by this Court (Docket No. 787). Section 1112(b)(4) of the Bankruptcy Code provides a non-exhaustive list of examples that may constitute cause for dismissal including (E) failure to comply with an order of the court and (P) failure to pay any domestic support obligation payable post-petition. 11 U.S.C. § 1112(b)(4)(E) and (P). A court may order the conversion or dismissal of a chapter 11 case upon its own motion for the reasons specified in the statute. Such necessity would arise to assure compliance with a court order or rule or prevent the abuse of process, or abuse of the bankruptcy system. Alan N. Resnick & Henry J. Sommer 7-1112 Collier on Bankruptcy ¶ 1112.04 (2014).

The Court determined that the $50,000 monthly payment ordered by local court to be paid by Debtor to Candelario constituted a DSO as defined by § 101(14A) of the Bankruptcy Code. 11 U.S.C. § 101(14A) (Docket No. 547). On his motion to stay the payment of DSO pending appeal, Debtor admitted that unless the order was stayed he would be forced to commence payments of the monthly sum of $50,000[17.] (Docket No. 565). The Court then denied Debtor's request to stay pending appeal and ordered Debtor to start making post-petition DSO payments immediately.[18] (Docket Nos. 577, 618 & 674). Notwithstanding, Debtor failed to comply with both orders and has not made any post-petition DSO payments, thereby violating § 1112(b)(4)(E) and (P) every month as payments become due.

Section 1129(a)(14) of the Bankruptcy Code establishes as a necessary requirement for confirmation that the debtor be current in his post-petition DSO obligations. 11 U.S.C. § 1129(a)(14). By not curing all post-petition DSO payments, Debtor's plan is patently unconfirmable

---

17. After the stay pending appeal had been denied and after retaining new counsel, Debtor conveniently distanced himself from his prior statements, alleging no payments had to be made by Debtor since the Court's order was interlocutory and Debtor did not owe any DSO to Candelario.

18. Candelario's reconsideration, which was granted by the Court, requested the following remedy: "order Debtor to immediately make the July 4, 2013, Support Payment to Candelario and all subsequent payments as they become due on the fourth day of each month." (Docket Nos. 577 & 674).

from its face.  The Court granted Debtor one last opportunity to comply with the DSO order, which he flagrantly disregarded. As a result, the case must be dismissed pursuant to § 1112(b)(4)(E) or (P) because he has failed to comply with court orders and he is not current on monthly DSO payments. Debtor's actions leave this Court with no other option than to follow its statutory obligation to dismiss the case since there are no unusual circumstances to establish that dismissal under § 1112(b) is not in the best interest of all parties.[19]

For all the reasons stated herein, the Court abstains from hearing this case under 11 U.S.C. § 305(a)(1) and as a result the case is dismissed.  In the alternative, the case is dismissed pursuant to 11 U.S.C. § 1112(b)(4)(E) and (P) for failure to make DSO payments in violation of previous court orders.

This Opinion and Order will constitute Findings of Fact and Conclusions of Law made by this Court.

SO ORDERED.

In San Juan Puerto Rico, this 17th day of April, 2014.

Mildred Caban Flores
U.S. Bankruptcy Judge

---

19. Although Candelario has adamantly requested that the case be converted to a Chapter 7 instead of dismissing the case, due to the procedural history of this case it is unlikely that the introduction of a trustee will do anything but add an additional party to this two party dispute. The appointment of an examiner did little but to increase the size of the docket and administrative expenses.  Moreover, without the resolution of the state court case a Chapter 7 case would be just as stagnant as its Chapter 11 version. After many years of litigation in local court and understandably frustrated, Candelario would like to use this forum to accelerate the resolution of his domestic dispute, but as explained this is not the proper forum.